Filed 8/22/24  P. v. Martinez-Valenzuela CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> LUIS ENRIQUE MARTINEZ-VALENZUELA, <br><br>     Defendant and Appellant. | D083780 <br><br><br> (Super. Ct. No. RIF2205539) |

APPEAL from a judgment of the Superior Court of Riverside County, Bernard Schwartz, Judge.  Affirmed.

John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Brendon Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

Luis Enrique Martinez-Valenzuela was convicted of attempted murder of John Doe and assault with a firearm of Jane Doe.  Martinez-Valenzuela argues the court erred in denying his request to instruct the jury on imperfect

self-defense, which would support a conviction of the lesser included offense of attempted voluntary manslaughter. We conclude there was insufficient evidence to warrant the instruction. Martinez-Valenzuela also contends the court erred in declining to acquit him of the assault with a firearm charge under Penal Code section 1118.1. We conclude sufficient evidence supported an inference of guilt to present that charge to the jury. We thus affirm the judgment.

I.

In October 2021, M.S. was the designated driver for a night out with her husband U.V., his cousin John Doe, and another cousin. They arrived in a bar parking lot at around 10:30 p.m., entered the bar about 15 minutes later, and danced and drank without incident. The group returned to their car shortly after midnight. M.S. entered the car, wanting to go home, but the three intoxicated men stood outside talking. M.S. tried to "rally them" to leave, but they would not listen.

At around 12:25 a.m., Martinez-Valenzuela drove his truck past the group's car, turned around, drove back past them slowly, stopped, then reversed toward the group before stopping again. As he drove past the second time, John Doe told M.S. to follow the truck because Martinez-Valenzuela said something to John Doe, who M.S. testified appeared upset. M.S. refused and put her car in reverse for the men in her group to get in, but they still would not listen. She saw John Doe walk toward Martinez-Valenzuela's truck after it reversed and stopped, and feared John Doe and Martinez-Valenzuela would get into a verbal fight.

John Doe testified that Martinez-Valenzuela "assaulted [him] verbally," and although he did not remember what Martinez-Valenzuela said, the words were "offending" him. He testified he was not angry, but he felt disrespected

2

and wanted to know what Martinez-Valenzuela said and why, so he approached the truck to ask. He walked "normal[ly]" to the truck while they "exchanged words," and the "exchange of words" continued once he reached the truck. John Doe had no weapons and did not threaten Martinez-Valenzuela. U.V. testified John Doe was three to six feet from the truck and John Doe estimated he was eight to ten feet away. M.S. testified John Doe was next to the truck's driver's side for 40 to 45 seconds before she heard "about five or more" gun shots. U.V. heard "maybe four" shots at this time. Martinez-Valenzuela had shot at John Doe from inside his truck with an AR-15 rifle. John Doe heard and felt two shots, then fell.

After seeing John Doe shot and prone, U.V. ran to Martinez-Valenzuela's truck "so that he wouldn't shoot at [John Doe] anymore," "struggled" with him, and grabbed both his hands. U.V. testified the rifle discharged two more shots during the struggle, while M.S. heard about three. U.V. did not know how the rifle discharged, but testified it was pointed toward John Doe when he heard the shots. Martinez-Valenzuela then accelerated in his truck, dragging U.V. "for a while" before he let go and fell. This all happened within about 30 seconds after the first round of shots.

One of the bullets, from either the first or second round of shots, hit a bystander, Jane Doe, in the leg. She heard eight shots in total but did not know which hit her. She saw Martinez-Valenzuela's truck drive away after she felt pain to her leg.

A security guard testified that Martinez-Valenzuela arrived at the bar at approximately 11:00 p.m. wearing a grey hoodie. He left just before midnight and drove away quickly, which was uncharacteristic because he was usually calm. Martinez-Valenzuela drove back into the parking lot about

25 minutes past midnight, when the shooting occurred. U.V. testified Martinez-Valenzuela was wearing a bulletproof vest during their struggle.

## II.

## A.

Martinez-Valenzuela contends the trial court erred in denying defense counsel's request to instruct the jury on imperfect self-defense. We disagree because there was insufficient evidence to support the instruction.

"[I]mperfect self-defense is not an affirmative defense, but a description of one type of voluntary manslaughter." (*People v. Manriquez* (2005) 37 Cal.4th 547, 581 (*Manriquez*).) Attempted voluntary manslaughter is a lesser included offense of attempted murder. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 197.) Attempted murder is the unlawful attempted killing of a human being with malice aforethought. (§§ 187(a), 664.) An attempted killing based upon an unreasonable belief in the need for self-defense obviates malice, which cannot coexist with an actual belief that the lethal act was necessary to avoid death or serious bodily injury. (*People v. Beltran* (2013) 56 Cal.4th 935, 951.) Thus, an attempted killing committed because of an unreasonable belief in the need for self-defense is attempted voluntary manslaughter, not attempted murder. (*People v. Elmore* (2014) 59 Cal.4th 121, 129.) This doctrine is narrow, as it requires that the defendant have an *actual* belief in the need for self-defense to avoid *imminent* danger to life or great bodily injury. "Fear of future harm—no matter how great the fear and no matter how great the likelihood of the harm—will not suffice." (*Manriquez*, at p. 581.)

A trial court must instruct the jury on a lesser included offense if there is substantial evidence the defendant committed the lesser but not the greater offense. (*People v. Simon* (2016) 1 Cal.5th 98, 132 (*Simon*).) As our

Supreme Court has explained, "the existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense." (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).)  Rather, the evidence must be of a quantum or quality that the court has described, variously, as "evidence that a reasonable jury could find persuasive" (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8) or "evidence . . . 'substantial enough to merit consideration' by the jury" (*Breverman,* at p. 162).  "Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense." (*Simon*, at p. 132.)  We review a trial court's failure to instruct on a lesser included offense de novo and view the evidence in the light most favorable to the defendant in doing so.  (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

Here, we agree with the People that the record is "devoid of evidence suggesting" Martinez-Valenzuela harbored any *actual* belief he was in *imminent* danger of death or great bodily injury.  (*Manriquez*, 37 Cal.4th at p. 581.)  Martinez-Valenzuela claims evidence that (1) John Doe and the other two men in his group were "drunk," (2) John Doe wanted M.S. to follow his truck, and (3) M.S. thought John Doe was going to get into a fight with him, supports an inference that John Doe "was in a state that *could* appear aggressive." (Italics added.)  Additionally, U.V. testified John Doe raised his hands in the air from chest level as he approached Martinez-Valenzuela, and John Doe testified he felt disrespected, upset, and offended by what Martinez-Valenzuela said, although he could not recall the words.

However, neither witness testimony nor the video evidence shows, and Martinez-Valenzuela points to no other evidence, that John Doe was hostile or said anything that could be construed as fighting words or threatening. John Doe was unarmed, and there is no evidence Martinez-Valenzuela

5

believed he was armed. (See *Manriquez*, 37 Cal.4th at p. 582.) To the contrary, the evidence suggests Martinez-Valenzuela was the aggressor. It was he who left the bar and returned shortly after wearing a bulletproof vest and armed, and it was he who drove purposefully to where John Doe and his group were. (See *Simon*, 1 Cal.5th at p. 133.) He could, and would, have driven away had he actually believed he was in imminent danger.

Martinez-Valenzuela argues the fact he returned wearing a bulletproof vest supports a reasonable inference he "believed someone might be going to shoot him." At most, this indicates he may have harbored some fear of future harm, but it does not indicate he actually believed he was in imminent danger that "must be instantly dealt with," as required for imperfect self-defense. (*Manriquez*, 37 Cal.4th at p. 581 [cleaned up].)

In sum, the evidence was insufficient to require an imperfect self-defense instruction.

B.

Martinez-Valenzuela contends the trial court erred in declining to acquit him of the assault with a firearm charge under section 1118.1. We disagree.

The court "shall order the entry of a judgment of acquittal" of a charge "if the evidence then before the court is insufficient to sustain a conviction of such offense . . . on appeal." (§ 1118.1.) In deciding a section 1118.1 motion, the court asks "whether from the evidence . . . , including reasonable inferences to be drawn therefrom, there is substantial evidence of the existence of every element of the offense charged." (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 89.) "'The purpose of'" a section 1118.1 motion "'is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case.'" (*People v. Stevens* (2007)

6

41 Cal.4th 182, 200.) Thus, where "there is evidence from which an inference of guilt is justified a case will not be taken from the jury because an inference of innocence might also be drawn therefrom." (*People v. Wescott* (1950) 99 Cal.App.2d 711, 714.)

We review "the denial of a section 1118.1 motion under the standard employed in reviewing the sufficiency of the evidence to support a conviction." (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.) In doing so, "we do not determine the facts ourselves. Rather, we examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . . [I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding. We do not reweigh evidence or reevaluate a witness's credibility." (*Ibid.*, [cleaned up].) "[T]he relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Johnson* (1980) 26 Cal.3d 557, 576.)

The only element of the offense Martinez-Valenzuela challenges is that he *willfully* committed an act with a firearm that by its nature would directly and probably result in the application of force on another person. (§ 245(a).) Assault is a general intent crime that does not require specific intent to

7

injure the victim, but it does require the general intent to willfully commit the proscribed act. (*People v. Wyatt* (2010) 48 Cal.4th 776, 780.)

Martinez-Valenzuela concedes there was substantial evidence he fired the first round of shots intentionally but argues there was no evidence from which the jury could have concluded, even by inference, that Jane Doe was injured from that round. He urges Jane Doe was injured from the second round of shots. Below, defense counsel argued "that it doesn't appear to be a willful discharge of the firearm, which the evidence doesn't suggest it. It could have been just a misfire when the two gentlemen were wrestling over that firearm. And there was no willful pulling of the trigger."

The People now contend the trial court could have reasonably found Jane Doe was injured from the first round of shots, but below they conceded the evidence showed she was shot during the second round; argued it "could have been" a misfire, "but in reality, we don't know"; and urged their "position . . . that [the] trigger was pulled willfully." The court stated "it appears as though it was indeed the defendant that was squeezing the trigger and firing the shots . . . it's not required that he have the intent to shoot someone. It's only the use of the firearm, which is clearly done."

On appeal, Martinez-Valenzuela argues the theory that he willfully pulled the trigger while struggling with U.V. is speculation insufficient to satisfy the substantial evidence rule. He points to U.V.'s testimony that U.V. did not know how the rifle discharged. With the sole witness *not* stating Martinez-Valenzuela fired the second round of shots willfully and having no idea how they were fired, he contends "it would be pure guesswork" to find he did so willfully "as opposed to the gun being unintentionally discharged when [U.V.] grabbed [his] hands while [he] was holding it." He also relies on the prosecutor's concession that "'in reality, we don't know'" to conclude "it cannot

8

as a matter of logic or law be said that a trier of fact could find [the prosecution] proved beyond reasonable doubt that [he] intentionally fired the second round of shots."

Based on our review of the record, Martinez-Valenzuela oversimplifies the evidence. The evidence showed he shot at John Doe at least four times with a rifle. It is undisputed he fired this first round intentionally. U.V. testified that after one shot he saw John Doe fall to the ground then heard more shots. U.V. then ran to the truck, "struggled" with Martinez-Valenzuela and "pushed his hand so he wouldn't continue to take shots," but additional shots fired during that struggle. U.V. responded "[y]es" when asked if "[h]e shot again." On cross-examination, U.V. further testified:

> Q. And you testified that you struggled with the person in the truck?
> A. Yes.
> Q. Were you trying to disarm the person with the gun?
> A. Yes.
> Q. Did you guys struggle over possession of that gun?
> A. Yes.
> Q. Were you trying to pull it out of the other person's hands?
> A. No. I just got there so that he wouldn't shoot at [John Doe] anymore.
> Q. Let me ask you this: When you're struggling with the other person, do you ever attempt to grab the gun out of the person's hand?
> A. No.
> Q. You said you were struggling with the other person. Were you wrestling with the other person?
> A. No, I just grabbed their hand. And then he moved forward with the truck. Then—then he knocked me down.
> Q. Hang on. Stop. When you were wrestling with the person in that truck, did he have a gun in his hand when you were wrestling with him?
> A. Yes.
> Q. And was the gun pointed at you when you were wrestling with him?
> A. I would not be able to tell you because I just arrived and I grabbed his hand. And then when we were in that process is when he moved forward with the truck.

9

Q. Did you grab both of his hands?
A. Yes.
Q. And while you were wrestling with this person, does that gun discharge?
A. Yes. Yes. It was fired like two more times.
Q. And that's while you are both wrestling over the gun or wrestling together?
A. Yes.
Q. Do you have any idea, based upon your observation, how the gun actually discharged at that point?
A. No.
Q. Did it go off when you were struggling with the other person?
A. Yes.
[¶] . . . [¶]
Q. . . . : Could you tell the direction the gun was being pointed at when you heard the shots?
A. Yes.
Q. And where was that?
A. Towards where [John Doe] was laying.
Q. So you heard—or you saw the gun being pointed back to where [John Doe] was on the ground?
A. Yes.
Q. And you let go of the other individual or does his car just start to drive off?
A. I let go because he accelerated and I fell. And then for a while, I was dragged. And then when he turned, I let go and I fell.

Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that Martinez-Valenzuela willfully shot the second round. Most notably, U.V. testified he was attempting to stop Martinez-Valenzuela from continuing to take shots at John Doe as the rifle was pointed in John Doe's direction, all after Martinez-Valenzuela intentionally fired at least four shots at John Doe. The second round of shots followed less than 30 seconds after the first. A rational trier of fact could reasonably infer Martinez-Valenzuela was trying to continue

10

shooting at John Doe and therefore willfully pulled the trigger to discharge the second round of shots.

We recognize U.V.'s testimony that the second round of shots were fired in the course of a struggle in which he grabbed both of Martinez-Valenzuela's hands could support a reasonable inference that round was unintentionally discharged. However, "[a]lthough it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." (*People v. Jones* (2013) 57 Cal.4th 899, 960-961 [cleaned up].)

### III.

We affirm the judgment.

CASTILLO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.

11